IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EAGLE, INC.,**<br><br>        Plaintiff,<br><br>   v.<br><br>**ONEBEACON AMERICA INSURANCE COMPANY; STONEWALL INSURANCE COMPANY; HOUSTON GENERAL INSURANCE COMPANY; PACIFIC EMPLOYERS INSURANCE COMPANY; ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.; EXCESS INSURANCE CO. LTD.; PORTMAN INSURANCE LIMITED (AXA S.A.) (formerly doing business as LONDON AND HULL MARITIME INS. CO. LTD.); THE PRUDENTIAL ASSURANCE CO. LTD. ; ROYAL & SUN ALLIANCE PLC (formerly doing business as PHOENIX ASSURANCE CO. LTD.); AGEAS INSURANCE LIMITED (formerly doing business as BISHOPGATE INSURANCE CO. LTD. "Q" A/C); RIVERSTONE INSURANCE (UK) LIMITED (formerly doing business as DIA TOKYO INSURANCE CO. (UK) LTD.); CONTINENTAL INSURANCE COMPANY (formerly doing business as CONTINENTAL (MOAC));  YORKSHIRE INS. CO. LTD. "L" A/C; TENECOM LTD. (formerly doing business as YASUDA FIRE & MARINE INS. CO. (UK) "T" A/C); SKANDIA UK INSURANCE CO. LTD. "T" A/C; JOHN AND JANE DOES A-Z; and CORPORATIONS A-Z,**<br><br>        Defendants. | Civil Action No. _____<br><br>Section:<br><br>Judge:<br><br>Magistrate: |

**COMPLAINT FOR DECLARATORY JUDGMENT AND
<u>DEMAND FOR JURY TRIAL</u>**

**INTRODUCTION**

1. This action is brought by Plaintiff Eagle, Inc. ("Eagle") seeking declaratory judgment that, among other things, insurance policies issued or subscribed to by the defendant insurers provide defense and/or indemnity coverage to Eagle for liability and/or potential liability arising out of claims alleging bodily injury, including disease, disability and death, as a result of their respective exposures to asbestos-containing materials allegedly distributed, handled, installed or sold by Eagle, and that the policies obligate the defendant insurers to pay Eagle's defense costs to indemnify Eagle for any liability incurred by Eagle in connection with such claims. Eagle also seeks additional declarations regarding the defendant insurers obligations under their policies that are ancillary to these basic duties to defend and indemnify

**JURISDICTION/VENUE**

2. Jurisdiction is proper in this Court and under 28 U.S.C. § 1332(a) because complete diversity exists among the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

3. Venue is proper in this district under 28 U.S.C. § 1391(a) as defendants are, and/or were at all relevant times, authorized to conduct business and have regularly conducted business in this District, or otherwise agree to make themselves amenable to service of process in this District. As such, defendants have purposefully availed themselves of the benefits and protections of conducting business in Louisiana and in this District.

**PARTIES**

4. Plaintiff Eagle, Inc. ("Eagle"), formerly known as Eagle Asbestos and Packing Co., Inc., is a corporation, incorporated under the laws of the State of Louisiana, authorized to do and doing business in the State of Louisiana at all relevant times, with its principal place of business in New Orleans, Louisiana.

5. Defendant OneBeacon America Insurance Company ("OneBeacon") is a Massachusetts corporation with its principal place of business in the State of Massachusetts, doing business at all relevant times in the State of Louisiana. OneBeacon is the legal successor

under policies issued to Eagle by American Employers' Insurance Company, Commercial Union Insurance Company of New York, Employers Commercial Union Insurance Company of America, Employers Commercial Union Insurance Company, and Commercial Union Insurance Company.

6. Defendant Stonewall Insurance Company ("Stonewall") is an Ohio corporation with its principal place of business in the State of Massachusetts, doing business at all relevant times in the State of Louisiana.

7. Defendant Houston General Insurance Company ("Houston General") is a Texas corporation with its principal place of business in the State of Massachusetts, doing business at all relevant times in the State of Louisiana.

8. Defendant Pacific Employers Insurance Company ("Pacific Employers") is a California corporation with its principal place of business in the State of Pennsylvania, doing business at all relevant times in the State of Louisiana.

9. Defendant Allied World Assurance Company (U.S.) Inc. ("Allied World"), formerly known as Commercial Underwriters Insurance Company, is a Delaware corporation with its principal place of business in the State of New York, at all relevant times doing business in the State of Louisiana. Allied World is the legal successor to policies issued to Eagle by Commercial Underwriters Insurance Company.

10. Defendant Excess Insurance Co. Ltd., on information and belief, is an insurer with offices in West Sussex, England, and/or authorized to do business through the London Market, and at all relevant times was authorized, through agents, to underwrite policies covering risks in the State of Louisiana.

11. Defendant Portman Insurance Limited (AXA S.A.), formerly doing business as London and Hull Maritime Ins. Co. Ltd., on information and belief, is an insurer with offices in London, England, and/or authorized to do business through the London Market, and at all relevant times was authorized, through agents, to underwrite policies covering risks in the State of Louisiana.

12. Defendant The Prudential Assurance Co. Ltd., on information and belief, is an insurer with offices in London, England, and/or authorized to do business through the London Market, and at all relevant times was authorized, through agents, to underwrite policies covering risks in the State of Louisiana.

13. Defendant Royal Sun & Alliance Insurance plc, formerly doing business as Phoenix Assurance Co. Ltd., on information and belief, is an insurer with offices in Horsham, England, and/or authorized to do business through the London Market, and at all relevant times was authorized, through agents, to underwrite policies covering risks in the State of Louisiana.

14. Defendant Ageas Insurance Limited, formerly doing business as Bishopgate Insurance Co. Ltd. "Q" A/C, on information and belief, is an insurer with offices in Eastleigh, Hampton, England, and/or authorized to do business through the London Market, and at all relevant times was authorized, through agents, to underwrite policies covering risks in the State of Louisiana.

15. Defendant Riverstone Insurance (UK) Limited, formerly doing business as Dia Tokyo Insurance Co. (UK) Ltd., on information and belief, is an insurer with offices in London, England, and/or authorized to do business through the London Market, and at all relevant times was authorized, through agents, to underwrite policies covering risks in the State of Louisiana.

16. Defendant Continental Insurance Company, formerly doing business as Continental (MOAC), is a corporation organized under the laws of the State of new Hampshire with its principal place of business in the State of Illinois, and at all relevant times, on information and belief, was an insurer with offices in London, England, and/or authorized to do business through the London Market, and was authorized, through agents, to underwrite policies covering risks in the State of Louisiana.

17. Defendant Tenecom Ltd., formerly doing business as Yasuda Fire & Marine Ins. Co. (UK) "T" A/C, on information and belief, is an insurer with offices in London, England, and/or authorized to do business through the London Market, and at all relevant times was authorized, through agents, to underwrite policies covering risks in the State of Louisiana.

18. Defendant Skandia UK Insurance Co. Ltd. "T" A/C (per Orion Group FT), on information and belief, is an insurer with offices in London, England, and/or authorized to do business through the London Market, and at all relevant times was authorized, through agents, to underwrite policies covering risks in the State of Louisiana.

19. Defendant Yorkshire Ins. Co. Ltd. "L" A/C, on information and belief, is an insurer with offices in London, England, and/or authorized to do business through the London Market, and at all relevant times was authorized, through agents, to underwrite policies covering risks in the State of Louisiana.

20. London Market Policy No. NWU 116, listed on **Exhibit A**, was subscribed to by the Defendants described above in Paragraphs 10-19.  London Market Policy No. NWU 116 contains provisions authorizing, and pursuant to which the Defendants described above in Paragraphs 10-19 have consented to, service of suit in any court of competent jurisdiction within the United States, including the instant Court.  These Defendants have conducted business in, and Policy No. NWU 116 provides coverage for bodily injury taking place in, the State of Louisiana.

## FACTUAL ALLEGATIONS

21. Eagle was a contract insulation installer, and distributor and seller of insulation products, in Louisiana, as well as in other states.  In the past, certain insulation products that Eagle installed, handled, distributed and/or sold contained asbestos.

22. Beginning in the mid-1980s and continuing to the present day, Eagle has been sued, or otherwise presented with claims, by numerous persons alleging bodily injury, including disease, disability and death, as a result of their respective exposures to asbestos-containing materials allegedly distributed, handled, installed or sold by Eagle ("Asbestos Claims").  To date, defense and settlement costs in connection with Asbestos Claims against Eagle have been in excess of $75,000.  Eagle expects that it will continue to be sued into the future by persons alleging Asbestos claims with injuries in excess of $75,000.

23. Eagle is insured under primary, umbrella, and/or excess insurance policies issued

by Defendants. Certain insurance policies issued to and/or covering Eagle may be missing or only partially documented. Eagle reserves the right to supplement and/or otherwise amend these claims to include any such policies.

24.     Each of the policies responsive to the Asbestos Claims against Eagle is listed in **Exhibit A** (the "Policies"). These Policies provide defense and/or indemnity coverage to Eagle for liability and/or potential liability arising out of the Asbestos Claims, and obligate Defendants to pay Eagle's defense costs in any suit alleging Asbestos Claims, and/or obligate the Defendants to indemnify Eagle for any liability incurred by Eagle in connection with such Asbestos Claims. These Policies have limits of liability in excess of $75,000. None of the Policies contain any terms or exclusions which would preclude them from providing coverage to Eagle for the allegations asserted in the Asbestos Claims. Eagle has performed all conditions precedent, and/or has been excused from performing any condition precedent, in order to secure coverage from Defendant under the Policies as to the Asbestos Claims, including, but not limited to, paying substantial premiums for the Policies purchased from the Defendants.

25.     The Policies share certain characteristics which, consistent with applicable law, provide broad coverage for Eagle, including, among other things:

a) the Policies pay "all sums" or "ultimate net loss" or the equivalent that Eagle is legally obligated to pay as damages because of bodily injury that took place, in any respect, during their particular policy periods;

b) the Policies contain aggregate limits only for claims that Defendants can prove, based on evidence, to be "products" claims or "completed operations" claims, as those terms are defined in the Policies;

c) many of the Policies pay defense costs in a manner that does not erode the amount of coverage that is available to Eagle.

26.     Based on this expansive policy language, and other wording in favor of Eagle, and consistent with applicable law, Eagle seeks rulings from this Court establishing, among other things, that:

a)  The Policies cover the Asbestos Claims asserted against Eagle that allege either injurious exposure, progression of injury and/or disease, manifestation of illness, or death during the Defendants' policy periods;

b)  The scope of coverage available under Defendants' Policies for the Asbestos Claims is not limited to the discrete portion of injury that occurred during any particular policy period;

c)  Each Policy must cover the Asbestos Claims, in full, up to their "per occurrence" limits, regardless of whether an continuing injury spans multiple policy periods;

d)  The Asbestos Claims that allege exposure to asbestos, for which Eagle is alleged to be liable, during Eagle's operations, including Eagle's construction and/or insulation activities, are subject only to the "per occurrence" limits of the Policies, and not subject to "aggregate" limits, if any, of the Policies;

e)  Any aggregate limit on coverage in any of the Policies is a limitation on coverage, therefore Defendants have the burden to prove, based on the evidence, any assertion by Defendants that any particular Asbestos Claim is subject to the aggregate limits in their Policies, if any;

f)  The definition of "completed operations" in some of the Policies is ambiguous, thus causing them to be construed in favor of the more expansive coverage available under the Policies;

g)  Defendants have the burden to prove, based on the evidence, that any particular Asbestos Claim is either a "products" claim or a "completed operations" claim in order to subject the claim to the aggregate limits in their Policies, if any;

h)  Eagle is entitled, at its own discretion, to select the Policy, or Policies, that defend and indemnify Eagle against the Asbestos Claims; and

      i)      The Asbestos Claims asserted against Eagle have resulted, and continue to result, from multiple "occurrences" as that term is used in the Policies and construed under applicable law.

### COUNT I
### DECLARATORY JUDGMENT –
### DUTY TO DEFEND AND INDEMNIFY
### (AGAINST ALL DEFENDANTS)

27. Plaintiff repeats, realleges and makes a part hereof each and every allegation contained in the preceding sections of this Complaint and incorporates same by reference as though fully set forth herein.

28. Pursuant to 28 U.S.C. § 2201-2202, Eagle seeks declaratory judgment that Defendants are obligated to defend and/or indemnify Eagle, in full, including, without limitations, payment of the cost of investigations, defense, settlement and judgment ("Duty to Defend and Indemnify"), for past, present and future Asbestos Claims under each of their Policies triggered by those Asbestos Claims.

29. Eagle seeks declarations ancillary to this basic Duty to Defend and Indemnify, including, without limitation:

      a)      a declaration and order that the Duty to Defend and Indemnify is joint and indivisible;

      b)      a declaration and order that the Policies cover the Asbestos Claims asserted against Eagle that allege either injurious exposure, progression of injury and/or disease, manifestation of illness, or death during the Defendants' policy periods;

      c)      a declaration and order that the scope of coverage available under Defendants' Policies for the Asbestos Claims is not limited to the discrete portion of injury that occurred during any particular policy period;

d)     a declaration and order that the scope of coverage available under the Policies for Asbestos Claims is "all sums" and is not limited to the discrete portion of injury that occurred during any particular policy period;

e)     a declaration and order that each Policy must cover the Asbestos Claims, in full, up to their "per occurrence" limits, regardless of whether an continuing injury spans multiple policy periods;

f)     a declaration and order that the Asbestos Claims that allege exposure to asbestos, for which Eagle is alleged to be liable, during Eagle's operations, including Eagle's construction and/or insulation activities, are subject only to the "per occurrence" limits of the Policies, and not subject to "aggregate" limits, if any, of the Policies;

g)     a declaration and order that any aggregate limit on coverage in any of the Policies is a limitation on coverage, therefore Defendants have the burden to prove, based on the evidence, any assertion by Defendants that any particular Asbestos Claim is subject to the aggregate limits in their Policies, if any

h)     a declaration and order that the definition of "completed operations" contained in at least some of the Policies is "ambiguous," and that certain Asbestos Claims against Eagle must therefore be covered under the portions of the Policies that supply the broadest available coverage;

i)     a declaration and order that Defendants have the burden to prove, based on the evidence, that any particular Asbestos Claim is either a "products" claim or a "completed operations" claim, as those terms are defined in the Policies, in order to subject the claim to the aggregate limits in their Policies, if any;

j)     a declaration and order that Eagle is entitled, at its own discretion, to select the Policy or Policies, and the policy year or policy years, to which

        to allocate defense and/or indemnity costs arising from the Asbestos Claims;

k)    a declaration and order that Eagle is not required to pay for self-insured or uninsured years for the Asbestos Claims as long as it has available insurance that is responsive to such claims;

l)    a declaration and order that, to the extent that this becomes relevant, Eagle is not obligated to pay any portion of defense and indemnity costs for the Asbestos Claims or insolvent insurers, or otherwise unavailable policies, as long as it has available insurance that covers such Asbestos Claims;

m)    a declaration and order that the Asbestos Claims asserted against Eagle have resulted, and continue to result, from multiple "occurrences" as that term is used in the Policies and construed under applicable law;

n)    a declaration and order that Defendants are obligated to defend, and/or pay defense costs, and indemnify Eagle against all Asbestos Claims, regardless of the form, or format, in which the claim for money is made;

o)    a declaration and order that any Policy written for multiple annual periods responds to the Asbestos Claims as if it was written for a series of one-year periods, with corresponding "per occurrence" limits; and

p)    a declaration and order the any Policy containing a "stub" period, or less a full annual period, provides Eagle with complete, annual "per occurrence" limits, as opposed to a "pro rata" portion of those limits.

30.    Defendants dispute the relief Eagle asserts is available under the Policies. Consequently, an actual and justiciable controversy exists between Eagle and Defendants concerning Defendants' respective obligations under their Policies.

31.    A judicial declaration is necessary and appropriate at this time, and under the circumstances alleged above, so that Eagle may ascertain its rights under the Policies. A judicial declaration of Eagles rights under the Policies will obviate *seriatim* litigation and a multiplicity

of actions that otherwise would result from the actual and justiciable controversy between Eagle and Defendants concerning their respective rights and obligations under the Policies.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Complainant demands declaratory judgment against Defendants, as follows:

    A.    For a declaration and order that the Duty to Defend and Indemnify is joint and indivisible.

    B.    For a declaration and order that the Policies cover the Asbestos Claims asserted against Eagle that allege either injurious exposure, progression of injury and/or disease, manifestation of illness, or death during the Defendants' policy periods.

    C.    For a declaration and order that the scope of coverage available under Defendants' Policies for the Asbestos Claims is not limited to the discrete portion of injury that occurred during any particular policy period.

    D.    For a declaration and order that the scope of coverage available under the Policies for Asbestos Claims is "all sums" and is not limited to the discrete portion of injury that occurred during any particular policy period.

    E.    For a declaration and order that each Policy must cover the Asbestos Claims, in full, up to their "per occurrence" limits, regardless of whether a continuing injury spans multiple policy periods.

    F.    For a declaration and order that the Asbestos Claims that allege exposure to asbestos, for which Eagle is alleged to be liable, during Eagle's operations, including Eagle's construction and/or insulation activities, are subject only to the "per occurrence" limits of the Policies, and not subject to "aggregate" limits, if any, of the Policies.

    G.    For a declaration and order that any aggregate limit on coverage in any of the Policies is a limitation on coverage, therefore Defendants have the burden to prove,

based on the evidence, any assertion by Defendants that any particular Asbestos Claim is subject to the aggregate limits in their Policies, if any

H. For a declaration and order that the definition of "completed operations" contained in at least some of the Policies is "ambiguous," and that certain Asbestos Claims against Eagle must therefore be covered under the portions of the Policies that supply the broadest available coverage.

I. For a declaration and order that Defendants have the burden to prove, based on the evidence, that any particular Asbestos Claim is either a "products" claim or a "completed operations" claim, as those terms are defined in the Policies, in order to subject the claim to the aggregate limits in their Policies, if any.

J. For a declaration and order that Eagle is entitled, at its own discretion, to select the Policy or Policies, and the policy year or policy years, to which to allocate defense and/or indemnity costs arising from the Asbestos Claims.

K. For a declaration and order that Eagle is not required to pay for self-insured or uninsured years for the Asbestos Claims as long as it has available insurance that is responsive to such claims.

L. For a declaration and order that, to the extent that this becomes relevant, Eagle is not obligated to pay any portion of defense and indemnity costs for the Asbestos Claims or insolvent insurers, or otherwise unavailable policies, as long as it has available insurance that covers such Asbestos Claims.

M. For a declaration and order that the Asbestos Claims asserted against Eagle have resulted, and continue to result, from multiple "occurrences" as that term is used in the Policies and construed under applicable law.

N. For a declaration and order that Defendants are obligated to defend, and/or pay defense costs, and indemnify Eagle against all Asbestos Claims, regardless of the form, or format, in which the claim for money is made.

O. For a declaration and order that any Policy written for multiple annual

periods responds to the Asbestos Claims as if it was written for a series of one-year periods, with corresponding "per occurrence" limits.

      P.     For a declaration and order the any Policy containing a "stub" period, or less than full annual period, provides Eagle with complete, annual "per occurrence" limits, as opposed to a "pro rata" portion of those limits.

      Q.     For any and all costs of these proceedings, either totally or in part.

      R.     For any and all further general equitable relief to which it may be entitled.

Respectfully submitted,

/s/ *Winstol D. Carter, Jr.* _____
Winstol D. Carter, Jr., Bar # 03939
wcarter@morganlewis.com
Lauren A. McCulloch, Bar # 33973
lmcculloch@morganlewis.com
MORGAN LEWIS & BOCKIUS, LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 890-5000 Telephone
(713) 890-5001 Facsimile

**ATTORNEYS FOR PLAINTIFF EAGLE, INC.**